IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE BENNINGER,<br><br>    Plaintiff,<br><br>vs.<br><br>OHIO TOWNSHIP POLICE<br>DEPARTMENT and DOMINIC R.<br>DEJULIO,<br><br>    Defendants. | 2:19-CV-00524-PLD |

## MEMORANDUM OPINION

Plaintiff Michelle Benninger has asserted various civil rights and common law claims against the Ohio Township Police Department ("Police Department") and a former Ohio Township police officer, Dominic R. DeJulio ("Officer DeJulio"). She alleges that both the Police Department and Officer DeJulio violated her civil rights pursuant to 42 U.S.C § 1983. In addition, she asserts causes of action for assault, intentional infliction of emotional distress and negligence against Officer DeJulio.

The Police Department has moved to dismiss Plaintiff's civil rights claim against it. Officer DeJulio has filed a partial motion to dismiss her assault and negligence claims. Both motions have been fully briefed and are ready for disposition.

I. Facts Alleged in Complaint

The Complaint alleges that in August of 2017, Ms. Benninger, who was driving a vehicle, was stopped at a sobriety checkpoint that was being operated by Officer DeJulio. (Compl. ¶¶ 11, 12.) At the time, Officer DeJulio was a law enforcement officer who was employed by the Police Department. (*Id.* ¶¶ 9, 10.) Ms. Benninger was charged with driving with a blood alcohol level

above the legal limit. (*Id.* ¶ 13.) She subsequently appeared before the Court of Common Pleas of Allegheny County for a preliminary hearing on October 19, 2017. (*Id.* ¶ 14.) Almost immediately after this hearing and for weeks thereafter, Officer DeJulio inappropriately contacted her in an attempt to solicit sex from her. (*Id.* ¶¶ 15, 16.) This included sending "inappropriate, lewd and nude" photographs to her. (*Id.* ¶ 17.)

Ms. Benninger alleges that while this conduct took place and her charges were pending, Officer DeJulio used his status and authority as a police officer to threaten and intimidate her into having sex with him and/or to engage in inappropriate sexually explicit behavior. (*Id.* ¶¶ 18, 19.)

In Count I of the Complaint, Ms. Benninger alleges, among other things, that the Police Department, acting under color of state law, maintained defective policies, procedures, practices and customs, including the failure to properly hire, train, supervise and discipline its police officers. According to the Complaint, these deficient policies and procedures resulted in constitutional violations committed by untrained and/or improperly trained police officers such as Officer DeJulio, and Ms. Benninger sustained harm as a direct result of his unlawful conduct.

The remaining causes of action in the Complaint are against Officer DeJulio. Of import for this Opinion are Ms. Benninger's claim of assault in Count III and her negligence claim in Count V. She alleges in her assault claim that as a result of Officer DeJulio's intentional conduct, she was put in reasonable and immediate apprehension of harmful or offensive contact with her body. She further asserts that his actions, which are alleged to include inappropriate contact and communications, attempting to solicit sex and using his position to intimidate and threaten her, breached his duty to use reasonable care so as not to create a risk of undue harm to her.

II. Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id.* at 679.

The Court of Appeals has summarized this inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

III. Analysis of Motions to Dismiss

A. Civil Rights Claim Asserted Against the Police Department

In its Motion to Dismiss Ms. Benninger's civil rights claim against it, the Police Department asserts that the Complaint fails to allege facts to support her claim that it maintained a policy, practice or custom that caused injury to her.[1] As an initial matter, the Police Department notes that to the extent Ms. Benninger is basing her claim on a theory of vicarious liability, her claims fails as a matter of law because the Police Department cannot be vicariously liable for the unconstitutional acts of its employees. *Monell v. Department of Social Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Groman v. City of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). Rather, it contends, it can only be liable under § 1983 if it maintained a policy, practice or custom that harmed Ms. Benninger. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

Ms. Benninger acknowledges in her brief, and the Court agrees, that there is no respondeat superior liability in a Section 1983 context. She maintains, however, that she can bring suit against a government entity by alleging that a custom or practice of the Police Department caused her injuries.

The Police Department asserts that the allegations in the Complaint are too generalized and do not allege a specific course of conduct that represents a custom, practice or policy that would impose liability on it for Officer DeJulio's conduct. It contends that Ms. Benninger has failed to plead facts to suggest that the Police Department had some policy or practice that resulted in the

---

[1] Although not specifically identified in the Complaint, Ms. Benninger has a fundamental right and liberty interest in her bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment. *Kane v. Barger,* 902 F.3d 185, 192 & n.19 (3d Cir. 2018) (officer who took intimate photos of sexual assault victim in a sexually-gratifying manner and in violation of professional and departmental standards deprived her of her right to bodily integrity).

actions alleged to be those of Officer DeJulio. However, in arguing that these allegations are insufficient to state a claim under § 1983, the Police Department primarily relies upon case law in which motions for summary judgment were considered and granted. *See Regan v. Upper Darby Twp.*, 363 F. App'x 917 (3d Cir. Jan. 20, 2010); *Baez v. Falor*, 2012 WL 4356768, at *47 (W.D. Pa. Sep. 24, 2012); *Roach v. SCI Graterford Med. Dep't,* 398 F. Supp. 2d 379 (E.D. Pa. 2005); *Patterson v. Armstrong County Children & Youth Servs.*, 141 F. Supp. 2d 512, 525 (W.D. Pa. 2001). That is not the standard here, however.

At the same time, Ms. Benninger's opposition to the motion to dismiss relies in part on the content of news articles that she claims are matters of public record. Brief, pp. 3, 9. Officer DeJulio argues that because these additional facts are in newspaper articles on the websites of local media outlets, they are not matters of public record. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1197 (3d Cir. 1993); *Cole's Wexford Hotel, Inc. v. UPMC,* 127 F. Supp. 3d 387, 417 n.14 (W.D. Pa. 2015). The Court agrees that information reported in news articles is not a matter of public record for purposes of deciding a motion to dismiss. Thus, while the content of these articles may have some relevance to the claim asserted against the Police Department and/or Officer DeJulio, the Court cannot consider them in this context and must limit its review to the allegations in the Complaint.

Unlike the summary judgment cases cited by the Police Department, Ms. Benninger is not required at this stage to demonstrate the existence of material issues of fact that would preclude judgment in favor of the Police Department. Rather, she is only required to plead sufficient allegations to state a claim. The Complaint alleges, among other things, that the Police Department reflected its deliberate indifference to the risk of injury to the public because it had policies or practices of: inadequate training; condoning or sanctioning harassment of members of the public

5

by untrained officers; improperly investigating complaints of improperly trained officers; failing to appropriately discipline officers who violate the constitutional rights of the public; and permitting untrained or improperly trained officers to work. It is possible that a lack of adequate training, condoning prior behavior or the lack of disciplinary action, if proven, was closely related to the alleged unlawful activity by Officer DeJulio. *See Carter v. City of Phila.*, 181 F.3d 339, 357-58 (3d Cir. 1999) (complaint adequately alleged failure to train police officers and plaintiff "cannot be expected to know, without discovery, exactly what training policies were in place or how they were adopted."); *Adelman v. Jacobs*, 2019 WL 1651612, at *5 (W.D. Pa. Apr. 17, 2019) (allegations of failure to train, supervise and discipline officers were sufficient to survive a motion to dismiss). As all of the elements of the claim are sufficiently alleged, Ms. Benninger's allegations are adequate to survive a motion to dismiss.

B. Assault and Negligence Claims against Officer DeJulio

1. Assault claim

Incorporating every allegation that precedes Count III, Ms. Benninger alleges that Officer DeJulio's conduct put her in reasonable and imminent apprehension of harmful and offensive assault. Her allegations mirror the definition of assault under Pennsylvania law. *See Brownstein v. Gieda*, 649 F. Supp. 2d 368, 375 (M.D. Pa. 2009) (to constitute an assault, the defendant's action must place the plaintiff in "imminent apprehension of harmful or offensive contact"). Imminent apprehension is interpreted to mean that the person "must believe that the act may result in imminent contact unless prevented from so resulting by the other's self-defensive action or by his flight or by the intervention of some outside force." Restatement (Second) of Torts § 24. *See also Cucinotti v. Orman*, 159 A.2d 216, 217 (Pa. 1960) ("Words in themselves, no matter how

6

threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so.")

Ms. Benninger's allegations do not allege any facts that suggest that she had a reasonable apprehension of imminent harm. Simply alleging that Officer DeJulio's acts of sending "inappropriate, lewd and nude photographs to her via text message" and contacting her "in an attempt to solicit sex from her" placed her in imminent apprehension of offensive contact is not sufficient to state a claim for assault. Ms. Benninger does not allege that Officer DeJulio was in a position to carry out any conduct immediately, and therefore, she fails to state a claim upon which relief may be granted. *See Garnett v. Legislature of the Virgin Islands*, 2014 WL 902502, at *8 (D.V.I. Mar. 7, 2014) (legislative director for senator alleged that legislative counsel propositioned her for sex and made inappropriate comments to her, but this failed to state a claim for assault); *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) ("A merely verbal threat of indefinite action in the indefinite future is not an assault.").

Therefore, Officer DeJulio's motion to dismiss this claim will be granted.

2. Negligence claim

Ms. Benninger alleges in Count V of the Complaint that Officer DeJulio's conduct was negligent. However, even assuming that as a police officer, he owed her a duty of care,[2] the conduct described is not negligent in nature. Rather, as the Complaint lays out, he engaged in a purposeful and intentional course of conduct in which he attempted to solicit sex through inappropriate

---

[2] *But see State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 116 (3d Cir. 2009) (a woman (Iacono) who was shot at by a drunk man (Mehlman) sued Mehlman for various intentional torts and "negligence," and his estate sought coverage from State Farm, but the court held that "Mehlman breached a duty that he owed Iacono but the duty he breached was not a duty of reasonable care, it was a duty not to harm her intentionally").

7

contact, sent her inappropriate photographs and used his status and authority as a police officer to intimidate Ms. Benninger into having sex with him. Simply put, there are no allegations in the Complaint that support a negligence claim. *See Mehlman*, 589 F.3d at 116 ("We cannot permit Iacono, with allegations such that 'Dr. Mehlman further breached his duty to [Iacono] when he attempted to shatter the driver's side window with his elbow, pointed his gun at [Iacono] and pulled the trigger,' to convert an intentional act into an act of mere negligence."); *see also Doe v. Old Forge Borough*, 2015 WL 40471435, at *8 (M.D. Pa. July 1, 2015) (teenager who was encouraged to join the fire department as a junior member alleged that three police officers or firefighters engaged in repeated sexual acts with her and thus properly alleged numerous intentional torts, but could not "have it both ways" by also alleging that they engaged in negligent behavior).

As such, Officer DeJulio's motion to dismiss Count V will be granted.

IV. Conclusion

For the reasons set forth herein, the motion to dismiss of the Police Department is denied and Officer DeJulio's partial motion to dismiss Counts III and V of the Complaint is granted. Appropriate orders will follow.

January 17, 2020

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge